**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

No. 98-4432

D.C. Docket No. 96-CR-562-DLG

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/19/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS CABRERA, a.k.a. Luis Rafael Cabrera,

Defendant-Appellant.

-----------------------------------------------------------------------------------------

No. 98-4434

D.C. Docket No. 98-CR-77-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS CABRERA,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Florida

_____

**(April 19, 1999)**

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and RONEY, Senior Circuit
Judge.

HATCHETT, Chief Judge:

Appellant Luis Cabrera appeals his conviction and sentence for knowingly possessing

cellular telephone cloning equipment, in violation of 18 U.S.C. § 1029(a)(4). Because the

government failed to provide reliable and specific evidence regarding the fraud loss attributable

to Cabrera, we vacate Cabrera's sentence and remand the case to the district court for

resentencing.

## I. BACKGROUND

In June 1996, a confidential informant told Secret Service agents than an individual

known to him as "Shorty" had a small black box known as a "copy-cat," a device that allows

individuals to clone cellular telephones illegally. Witnesses later identified "Shorty" as the

appellant Cabrera. During a recorded telephone conversation between Cabrera and the

informant, Cabrera offered to clone a cellular telephone for the informant in exchange for ten

Electronic Serial Number/ Mobile Identification Number (ESN/MIN) combinations.[1] In

_____

[1] A cellular service provider assigns a combination of an ESN and a MIN to each cellular
telephone subscriber to access service. A combination of the two numbers also furnishes the
cellular service provider with a means to bill customers for their service usage.
    A cellular telephone cloning operation exists where an individual or group of individuals
acquire ESN/MIN combinations illegally from subscribers' cellular telephones to permit the
unauthorized use of those accounts; the "cloner" utilizes an electronic serial number reader (ESN
reader) to obtain the combinations. Cloners  reprogram the victim subscriber's ESN/MIN

2

addition, Cabrera told the informant that he could sell him a copy-cat for $1899. Later that day at a meeting, the informant, who was wearing a wire, gave Cabrera a cellular telephone and a piece of paper containing ten fictitious ESN/MIN combinations. Using his copy-cat, Cabrera cloned the cellular telephone, replacing its original ESN/MIN combination with one of those provided from the informant. [2]

After Secret Service agents, who were surveilling the meeting, arrested Cabrera, he admitted that he owned the copy-cat and cloning cables and had used them to clone two or three cellular telephones. Cabrera also stated that his "scanner"(ESN reader) was broken, making it necessary for him to purchase ESN/MIN combinations. Cabrera stated he used the "scanner" for one month before it became inoperable, and that he purchased nine ESN/MIN combinations from an individual named "Tony."[3]

When the agents later searched Cabrera's home, they seized an entire cloning operation consisting of a computer, cloning software, computer disks containing ESN/MIN combinations, cloning interface cables, an ESN reader, various cellular telephones, a computer-generated list of

combination into the cloned cellular telephone. The cloned cellular telephone user can then gain access to cellular service; the cellular service provider charges the unauthorized usage to the victim subscriber's telephone. The cloned cellular telephone user utilizes the telephone simultaneously with the authorized user until the victim discovers and reports the unauthorized calls. When the victim reports the fraud, the cellular provider normally removes the unauthorized calls from the victim's cellular telephone bill and changes the cellular telephone's ESN/MIN combination. Thus, ESN/MIN combinations are usually only "good" for approximately thirty days; once the victim subscribers receive their monthly cellular telephone bill and report the fraud, the cellular service provider invalidates the ESN/MIN combinations.

[2] A copy-cat can reprogram the ESN/MIN combination assigned to a cellular telephone originally and replace it with a different ESN/MIN combination.

[3] The record does not indicate how many of the ESN/MIN combinations found at Cabrera's home "Tony" provided to Cabrera.

ESN/MIN combinations and an EPROM programmer, which cloners use to reprogram cellular telephones. Cabrera shared his home with a roommate.

At the time of his arrest, Cabrera gave the agents a list of ESN/MIN numbers that he had cloned.[4] The agents gave all of the ESN/MIN combinations found on Cabrera's handwritten list, the computer-generated list, the computer and the computer disks to cellular service providers so that they could determine whether any of the legitimate owners of the cellular telephones assigned the combinations were defrauded. In addition, the agents interviewed Nelson Diaz, the owner of the air conditioning business where the agents arrested Cabrera. Diaz signed a statement acknowledging that he had known Cabrera for one and a half years and that Cabrera had cloned telephones during that entire period.

## II. PROCEDURAL HISTORY

A grand jury in the Southern District of Florida indicted Cabrera on one count of possessing telephone cloning equipment in violation of 18 U.S.C. § 1029(a)(4).[5] Before Cabrera's sentencing, a probation officer prepared a Presentence Investigation Report (PSI) that calculated Cabrera's base offense level at six, pursuant to U.S. Sentencing Guidelines Manual § 2F1.1. The PSI recommended that the district court adjust this offense level upward eleven additional levels, pursuant to Sentencing Guidelines § 2F1.1(b)(1)(L), to reflect a fraud loss of $850,897.32. The PSI based the fraud loss figure on the total amount of fraud the cellular

---

[4] The sentencing transcript refers to a page and one half handwritten list of ESN/MIN numbers that Cabrera provided to the agents. The list is not in the record.

[5] Section 1029 (a) provides in relevant part: "Whoever-- (4) knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device- making equipment; shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section."

4

service providers reported for all of the ESN/MIN combinations contained on Cabrera's handwritten list, the computer-generated list, the computer and the computer disks found in Cabrera's home. The PSI also recommended that Cabrera receive a two-level enhancement to reflect that his offense involved more than minimal planning and/or more than one victim; and it also recommended a three-level decrease for his acceptance of responsibility and his timely guilty plea. Based on a total offense level of 16 and a nonexistent criminal history, the PSI calculated Cabrera's presumptive guidelines sentencing range to be between 21 and 27 months.[6]

Cabrera filed a motion for the government to produce specific evidence regarding the fraud loss calculation in the PSI. The government filed a responsive pleading with several attachments, including one attachment that summarized the fraud loss each cellular service provider suffered. Although the government stated that all of the loss occurred within a one-year period, the summary failed to provide a time period for each loss. Moreover, the compilation did not associate the loss with the ESN/MIN combinations found on the list Cabrera provided containing combinations that he used to clone telephones, the computer generated list found in Cabrera's home, or the computer and accompanying disks, also found in Cabrera's home.

Cabrera filed objections to the PSI challenging the fraud loss figure and moved to strike the government's fraud loss amount. Cabrera also argued that the government failed to prove that he was the person responsible for the fraud loss amount it advanced and that he cloned

_____

[6] The probation officer later prepared a second PSI that increased the sentencing recommendation from 27 to 33 months after Cabrera failed to appear at his first sentencing hearing.

cellular telephones for only a short time.[7]  In addition, Cabrera requested that the government

identify what portion of the loss came from the ESN/MIN combinations that he provided to the

agents when they arrested him.

Cabrera pleaded guilty to possessing cellular telephone cloning equipment.[8]  At the

sentencing hearing, Cabrera argued that the government had failed to support its fraud loss figure

through specific and reliable evidence that linked him to the loss.  Although Cabrera admitted

that he possessed the cellular telephone cloning equipment, he stated that the government's

evidence did not show that he had used the computer and software seized from his home, which

he shared with another individual, to clone telephones.  Cabrera also argued that it is "well

known" that different cloners use the same ESN/MIN combinations and that the government

failed to show that these other individuals were not responsible for the loss.

When the district court asked Cabrera whether he wanted to present any evidence to

establish that someone else used the cellular telephone cloning equipment found in his home,

Cabrera instead discussed a sworn affidavit that he obtained from Diaz recanting his prior

---

[7] The record does not contain a more specific figure for the time period that Cabrera admits he cloned cellular telephones.

[8] Cabrera initially failed to appear for sentencing.  The government issued a bench warrant for his arrest.  The police arrested Cabrera and the grand jury indicted him for failing to appear at sentencing and disobeying a court order to appear for sentencing pursuant to 18 U.S.C. §§ 3146 and 401(3).  The court consolidated the failure to appear case with the cellular telephone cloning case. The issues in this appeal only relate to facts underlying the cellular telephone cloning case.

6

statement and asserting that he was aware Cabrera cloned cellular telephones for only three months, rather than a year and a half.[9]

In response, the government argued that Cabrera admitted cloning cellular telephones for two years.[10]  The government stated that it attributed only one year of the fraud loss associated with the stolen ESN/MIN combinations to Cabrera.  The district court overruled Cabrera's objection to the government's fraud loss figure, finding that the one-year period was appropriate and noting that Cabrera presented no evidence to contradict the government's figure.  The district court granted Cabrera's request for the three level downward departure for acceptance of responsibility.  The district court sentenced Cabrera to 33 months of imprisonment, including 6 months on the failure to appear charge.

### III. ISSUES

The issues we discuss are whether the district court erred when: (1) it failed to require the government to provide "reliable and specific evidence" regarding the amount of fraud loss; and (2) it adopted the PSI without making "any" findings on the issue of the disputed fraud loss figure.

### IV. DISCUSSION

---

[9] No such statement from the investigator or Diaz exists in the record.  The sentencing transcript, however, reflects Cabrera's assertion that the investigator was present and that the government received a copy of Diaz's statement.  The PSI and the government both refer to Nelson Diaz as the person who made both statements and owned the air conditioning company.  Cabrera's brief refers to Jorge Diaz as making the second statement and owning the company.  The record also contains a sworn statement from a Carlos Diaz, who states that he owns the company where Nelson Diaz works.

[10] Cabrera's statement, however, does not contain this admission.  Further, the government presented no direct evidence of this admission.

7

**A. The fraud loss estimate**

We review the district court's loss determination for clear error. See United States v. Goldberg, 60 F.3d 1536, 1539 (11th Cir. 1995). The guidelines do not require the government to make a fraud loss determination with precision; the figure need only be a reasonable estimate given the information available to the government. See United States v. Dominguez, 109 F.3d 675, 676 (11th Cir. 1997). Upon challenge, however, the government bears the burden of supporting its loss calculation with "reliable and specific evidence." See United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) ; United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). Cabrera argues that the district court impermissibly imposed an obligation on him to produce evidence disputing the government's figure rather than requiring the government to meet this standard.

Cabrera first argues that, pursuant to Sepulveda, the government must proffer a "cell site" analysis. See Sepulveda, 115 F.3d at 889. A cell site analysis identifies the geographic area producing the calls. See Sepulveda, 115 F.3d at 890. Sepulveda, however, is factually distinguishable from this case. In Sepulveda, the defendants operated a "call sell center" where customers rented cellular telephones, with all the calls emanating from one location, the call sell center. The call sell center was located between two portions, or sectors, of a cell site. After the government arrested the Sepulveda defendants, it made numerous test calls at the call sell center to determine the cell sector that handled the calls. Cell sector A handled all the test calls. The government, however, charged the Sepulveda defendants with all the unauthorized calls made from cell sector A and cell sector B. This court remanded the case for resentencing because the cell site analysis the government proffered in response to the Sepulveda defendants' challenge

8

was inconclusive about whether the unauthorized cell sector B calls more likely than not originated from the defendants' store. See Sepulveda, 115 F.3d at 891-92.

A cell site analysis is necessary in a case like Sepulveda where the cellular air time theft occurs in one location and the government charges the defendant with possession of cloned telephones in violation of 18 U.S.C. § 1029(a)(3). In this type of case, courts limit liability appropriately to the amount of loss that the defendant's cloned telephone caused. A cell site analysis, however, is not helpful in a case involving device making equipment and the production and distribution of cloned telephones in violation of 18 U.S.C. 1029 (a)(4), because the origin of the loss cannot be pinpointed to one geographic area.[11] Thus, a cell site analysis in this case would not be helpful.

When the government convicts an individual for possession of cloning "tools," and wishes to enhance the sentence based on the amount of use associated with the illegally obtained ESN/MIN combinations, the government must provide evidence specifically linking the amount of fraud loss to the defendant's cloning activities. Multiple unauthorized users often use the same ESN/MIN combinations simultaneously. See Sepulveda, 115 F.3d at 890. Further, sellers provide the same ESN/MIN combinations to multiple buyers. Because the ESN/MIN numbers are a commodity that many individuals can utilize, the government must provide proof to attribute the unauthorized calls made with the ESN/MIN combinations to the defendant. See Sepulveda, 115 F.3d at 889 (holding that the government failed to carry its burden of proving the amount of loss used to enhance the defendants' sentence).

---

[11] Once a cloner programs a telephone with a valid ESN/MIN combination, the user can normally make calls to any number, from any location.

The government attempted to attribute the loss corresponding with all the ESN/MIN combinations found on Cabrera's handwritten list, the computer-generated list and all the numbers acquired from the computer and computer disks to Cabrera. The loss summary that the government produced fails to attribute each cellular provider's loss to specific ESN/MIN combinations, and thus fails to identify the origin of the loss clearly. The losses could be associated with the ESN/MIN combinations found on either of the two lists, the computer disks, the computer itself or a combination. The government failed to sufficiently link all of these ESN/MIN combinations to Cabrera's cloning activities.

The computer-generated list of ESN/MIN combinations found at Cabrera's home contained handwritten notes, but the government did not offer any evidence that the handwriting was Cabrera's. Additionally, the government failed to offer any testimony or other evidence that Cabrera actually used the computer to clone cellular telephones or sold the ESN/MIN combinations to others.[12] The only direct evidence regarding the fraud loss is Cabrera's own handwritten list of ESN/MIN combinations that he provided to the Secret Service agents upon arrest. Cabrera admitted that he used these combinations to clone cellular telephones. Therefore, the fraud loss associated with these ESN/MIN combinations are properly attributable to Cabrera.

The government argues that Cabrera did not properly preserve the issue of whether it provided sufficient evidence to support its calculations. The record shows, however, that

---

[12] In fact, Cabrera testified that he purchased nine of the ESN/MIN combinations from "Tony."

10

Cabrera objected repeatedly before and during sentencing regarding the fraud loss attributable to him.

The government also argues that we should accept the Ninth Circuit's holding in United States v. Clayton, 108 F.3d 1114 (9th Cir. 1997). In Clayton, the police seized several cellular telephones, connecting cables, adapters, a computer containing cloning software, a computer log file containing ESN/MIN combinations and a calendar book containing several additional ESN/MIN combinations. At least 2 of the telephones were cloned, and at least 29 of the log file numbers were used to clone telephones. Clayton argued that the government could attribute to him only a fraction of the fraud loss associated with the ESN/MIN combinations he possessed because others could have obtained the same combinations and cloned them. The Ninth Circuit rejected Clayton's argument and held him responsible for the loss associated with all of the ESN/MIN combinations he possessed. Clayton, 108 F.3d at 1118-19. Although Clayton appears factually similar to this case, two important distinctions are present. First, in Clayton the government pinpointed the loss to one specific source: the computer log file. In this case, the government failed to specifically attribute the losses to any of the sources for the ESN/MIN combinations. Second, in Clayton no evidence exists that anyone other than Clayton used the truck, which contained all of the cloning "tools." In this case, Cabrera asserted that he did not have sole use of his home, which contained all of the ESN/MIN combinations except those on the handwritten list. To the extent that our holding conflicts with Clayton, however, we reject the proposition that the government can attribute the entire fraud loss associated with ESN/MIN combinations to the defendant solely because the defendant possessed those combinations.

We hold that telephone cloning fraud loss is attributable to a defendant, and therefore can be utilized to enhance the defendant's sentence, only if the government provides reliable proof linking the defendant to the ESN/MIN combinations fraudulently used.

**B. The district court's findings**

Cabrera next argues that the district court abused its discretion in adopting the fraud loss amount attributed to him in the PSI because a sentencing court cannot adopt the government's figures if they amount to "conclusory factual recitals." See United States v. Bernardine, 73 F.3d 1078, 1081 (11th Cir. 1996). A sentencing court must make factual findings sufficient to support the government's claim of the amount of fraud loss attributed to a defendant in a PSI. See United States v. Butler, 41 F.3d 1435, 1442 (11th Cir.), cert. denied, 514 U.S. 1121 (1995). The district court found explicitly that the amount of loss attributed to Cabrera was correct because he admitted that he possessed the equipment that caused the losses. Because we hold that mere possession, without more, is insufficient to attribute the entire loss to Cabrera, the district court did not make the specific factual findings necessary to support the government's fraud loss amount.

## IV. CONCLUSION

Because we find insufficient evidence to support the amount of loss attributed to Cabrera, we vacate the sentence and remand to the district court for resentencing consistent with this opinion.

**VACATED and REMANDED.**