[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15405
Non-Argument Calendar

_____

D. C. Docket No. 06-20609-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARISTIDES BERENGUER,

Defendant-Appellant.

_____

No. 07-15460
Non-Argument Calendar

_____

D. C. Docket No. 06-20609-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT BERENGUER,

Defendant-Appellant.

_____

No. 07-15472
Non-Argument Calendar

_____

D. C. Docket No. 06-20609-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS BERENGUER,

Defendant-Appellant.

_____

No. 07-15520
Non-Argument Calendar

_____

D. C. Docket No. 06-20609-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IVAN AGUERA,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Florida

**(November 7, 2008)**

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Aristides Berenguer, Carlos Berenguer, Robert Berenguer, and Ivan Aguera appeal their 57-month sentences for conspiracy to solicit and receive kickbacks, in violation of 18 U.S.C. § 371, and for soliciting and receiving kickbacks from a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(1).[1] On appeal, each defendant argues that the district court improperly held him accountable for all Medicare reimbursements sought for prescriptions and oxygen concentrators for patients related to all codefendants, including Ricardo Aguera,[2] by misconstruing United States v. Booker, 543 U.S. 220, 125 S.Ct. 738,

---

[1] We note that Aristides Berenguer was not charged with violation of 42 U.S.C. § 1320a-7b(b)(1). Additionally, at the defendants's request, we consolidated United States v. Robert Berenguer, no. 07-15460; United States v. Carlos Berenguer, no. 07-15472; United States v. Aristides Berenguer, no. 07-15405, and United States v. Aguera, no. 07-15520 by order filed on January 8, 2008. The defendants also attempted to adopt each others briefs. However, only Aguera complied with local rule 28-1's requirement that a defendant provide "a statement describing in detail which briefs and which portions of those brief are adopted." Therefore, we only consider him to have adopted a codefendant's brief.

[2] We issued an opinion affirming Ricardo Aguera's convictions and sentences in United States v. Ricardo Aguera, no. 07-12950, on June 16, 2008.

160 L.Ed.2d 621 (2005). Additionally, the defendants contend that the fraudulent nature of the prescriptions and oxygen concentrators should not have been included as relevant conduct to their kickback offenses under U.S.S.G. § 1B1.3 because the fraud was unrelated to receipt of kickbacks, the government did not prove fraud with specific and reliable evidence, and the acts of others were not foreseeable. Also, the defendants challenge the district court's determination of the value of the improper benefit conferred to calculate their offense levels under U.S.S.G. § 2B4.1. Additionally, each defendant argues that the district court improperly applied a four-level role enhancement pursuant to U.S.S.G. § 3B1.1. Lastly, Ivan Aguera contends that the district court improperly denied his request for a reduction of his offense level for his minor role under U.S.S.G. § 3B1.2.

I.

In Booker, the Supreme Court held that the mandatory nature of the Guidelines rendered them incompatible with the Sixth Amendment's guarantee of a right to a jury trial. Booker, 543 U.S. at 232-35,125 S.Ct. at 749-51. Nevertheless, the Court also noted, in the remedial portion of the opinion, that rendering the Guidelines advisory would eliminate any constitutional concerns. Id. at 233, 125 S.Ct. at 750. In United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005), we noted that the Supreme Court in Booker rejected the argument that

4

the constitution prohibits the district court from making factual determinations that go beyond a defendant's admissions or the jury's verdict under an advisory sentencing guideline system. Further, a district court may consider both acquitted and uncharged conduct when sentencing in accordance with Booker. United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006).

Having reviewed the record and the briefs of the parties, we discern no error with respect to the district court's consideration of facts beyond those admitted by the defendants on entry of their pleas of guilt. In this case, the district court sentenced the defendants under advisory Guidelines. Thus, no Booker error occurred. Further, the contention that Medicare fraud related to the prescriptions or oxygen concentrators must be proven beyond a reasonable doubt to a jury or admitted before a district court could consider them as relevant conduct is without merit because we have specifically rejected this argument. See Chau, 426 F.3d at 1323-24.

## II.

We review a district court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Masferrer, 514 F.3d 1158, 1164 (11th Cir. 2008). Clear error is present if "left with a definite and firm conviction that a mistake has been committed" by the district court. United States

5

v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (citation omitted). We accord "great deference to the district court's assessment of the credibility and evidentiary content" of the witnesses before it. United States v. Lee, 68 F.3d 1267, 1276 (11th Cir. 1995).

The district court must properly calculate the guidelines range. Hamaker, 455 F.3d at 1336. However, an incorrect factual determination related to application of the Guidelines does not require remand if the error does not affect the selection of the sentence imposed. United States v. Scott, 441 F.3d 1322, 1329 (11th Cir. 2006).

Proper calculation of the Guidelines requires consideration of all relevant conduct. Hamaker, 455 F.3d at 1336. We broadly interpret the relevant conduct provisions. United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996). The government must prove relevant conduct with "'reliable and specific evidence.'" United States v. Cabrera, 172 F.3d 1287,1292 (11th Cir. 1999).

The Guidelines' relevant conduct provisions require consideration of the following to determine an offense level:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> . . .
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions

6

described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
(4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a).

According to the commentary, offenses constitute a common scheme or plan for purposes of relevant conduct if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, commentary (n.9(A)). Additionally, offenses are the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses" after considering "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Id. (n.9(B)).

In determining whether uncharged conduct is relevant, we evaluate the "similarity, regularity, and temporal proximity" between the counts of conviction and uncharged conduct. United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994). This evaluation includes consideration of "whether there are distinctive similarities between the offense of conviction and the remote conduct

that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." Id. (internal quotations omitted).

With respect to conspiracies, we have held that "the district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003). To determine the limits of sentencing accountability, the district court must first make individualized findings concerning the scope of the criminal activity undertaken by a particular defendant. Id. It may consider "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others" in determining the scope of the agreement. Id. at 1319-20. Second, it must determine whether the conduct was: "(1) in furtherance of the jointly undertaken criminal activity[] and (2) reasonably foreseeable in connection with that criminal activity." Id. at 1319. In determining whether activity is jointly undertaken, a court may consider whether the participants pool resources, such as sharing lead sheets of potential victims and telephones. United States v. Hall, 996 F.2d 284, 285-86 (11th Cir. 1993). However, a defendant's mere awareness of the scope of the overall operation is not enough to hold him accountable for the activities of the entire conspiracy. Hunter,

323 F.3d at 1321.

If the value of the bribe or the improper benefit exceeds $5,000, U.S.S.G. § 2B4.1 requires the district court to increase the offense level as indicated by the table in § 2B1.1. U.S.S.G. § 2B4.1(b)(1). The Guidelines define the value of the improper benefit to be conferred as "the value of the action to be taken or effected in return for the bribe." Id. § 2B4.1, comment. (n.2). The background notes provide the following example: "[i]f a gamble paid a player $5,000 to shave points in a . . . game, the value of the action to the gambler would be the amount he and his confederates won or stood to gain." Id. background note. Similarly, we have indicated that the value of the improper benefit conferred should only be limited to the amount of the bribe or kickback if the value of the net improper benefit cannot be estimated. United States v. DeVegter, 439 F.3d 1299, 1303 (11th Cir. 2006). Generally, the improper benefit conferred is the net value gained as a result of the kickback scheme. Id. at 1304 n.2.

Under U.S.S.G. § 2B1.1's table, the offense level is increased by 16 levels if the amount is more than $1,000,000.00 but less than $2,500,000.00. U.S.S.G. § 2B1.1(b)(1)(I). If the amount is more than $400,000.00 but less than $1,000,000.00, the offense level is increased by 14 levels. Id. § 2B1.1(b)(1)(H).

Having reviewed the record and the briefs of the parties, we discern no error

with respect to the district court's determination of the relevant conduct for which the defendants were held accountable or the monetary amounts used to calculated the Guidelines. In this case, the government offered reliable and specific evidence, consisting of testimony from the plea colloquy, the actual patients, a primary organizer of the scheme, and a federal special agent, to prove the relevant conduct related to fraud and the monetary amounts by a preponderance of the evidence. The evidence demonstrated that the prescription drug and oxygen concentrator schemes were part of the same course of conduct because they were perpetrated against the same victim, occurred during the same period of time, utilized the same patients and prescribing physicians, and shared the same modus operandi of seeking reimbursement for medically unnecessary services. Likewise, the evidence showed that defendants should be held accountable for each other's acts because they agreed to join and work together to perpetrate the schemes. Additionally, the government demonstrated that the defendants submitted claims for Medicare to reimburse approximately $1,270,000.00 for prescriptions, placing the defendants in the $1,000,000.00 to $2,500,000.00 category to warrant a 16-level increase of their offense levels under § 2B1.1's table. U.S.S.G. § 2B1.1(b)(1)(I). Therefore, the district court did not clearly err in its calculations related to U.S.S.G. §§ 1B1.3, 2B1.1, and 2B4.1.

III.

We review a district court's factual findings regarding a defendant's role in the offense for clear error. United States v. DeVaron, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). "So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." Id. at 945.

With regard to aggravating roles in the offense, the Guidelines provide for an increase in the offense level. U.S.S.G. § 3B1.1. Section 3B1.1(a) provides a four-level enhancement where a defendant plays an organizational or leadership role. Id. The enhancement is appropriate where the criminal activity involves five or more participants or where the defendant's role is "otherwise extensive." United States v. Holland, 22 F.3d 1040, 1045 (11th Cir. 1994). Section 3B1.1(b) provides a three-level enhancement where a defendant was a manager or supervisor, but not an organizer or leader.

In distinguishing a leadership or organizational role from a managerial or supervisory role, the district court should consider the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the

11

offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). The defendant need not be the sole leader or organizer of the conspiracy to merit enhancement. United States v. Rendon, 354 F.3d 1320, 1332 (11th Cir. 2003). However, application of the section "requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993). Further, we have indicated that a person who is indicted as an simply an aider and abettor but later is revealed to have greater involvement may be sentenced commensurate with his involvement. United States v. Nyhuis, 8 F.3d 731, 744 (11th Cir. 1993).

With respect to mitigating roles in an offense, the defendant bears the burden of proving the mitigating role in the offense by a preponderance of the evidence. DeVaron, 175 F.3d at 939. Under U.S.S.G. § 3B1.2(b), a district court may decrease a defendant's offense level by two levels if it finds that the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

In determining whether a minor role reduction is warranted, a district court "should be informed by two principles discerned from the Guidelines." DeVaron,

12

175 F.3d at 940.  Under the first prong, "the district court must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing."  Id. at 945.  Relevant conduct is the "conduct attributed to the defendant in calculating [his] base offense level."  Id. at 941.  "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable."  Id.

Under the second prong, "the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct."  DeVaron, 175 F.3d at 945.  A defendant, however, "is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants."  Id. at 944.  Instead, "the district court must determine that the defendant was less culpable than most other participants in [the] relevant conduct."  Id. at 944 (emphasis in original).  We have indicated that a defendant's role in assuring that illegal transactions are completed is a significant role to support denial of a downward adjustment under U.S.S.G. § 3B1.2(b).  United States v. Kummer, 89 F.3d 1536, 1547 (11th Cir. 1996).

13

Having reviewed the record and the briefs of the parties, we discern no error with respect to the district court's adjustments of the defendants's offense levels for their role in the offenses. As owners and operators of their individual durable medical equipment companies, the defendants had direct control and influence in the scheme's success because they secured the patient Medicare numbers used to seek reimbursements for prescriptions and oxygen concentrators. Therefore, the district court did not clearly err when it applied a four-level role enhancement under U.S.S.G. § 3B1.1. Likewise, the district court did not clearly err when it denied Ivan Aguera's request for a reduction in his offense level under § 3B1.2. Accordingly, we affirm each defendant's sentence.

**AFFIRMED.**[3]

---

[3] Appellants' requests for oral argument are denied.