[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 9, 2010
JOHN LEY
CLERK

No. 09-14202
Non-Argument Calendar

_____

D. C. Docket No. 07-00285-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOMMY JORDAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 9, 2010)

Before BLACK, CARNES, and PRYOR, Circuit Judges.

PER CURIAM:

Following a jury trial, Tommy Jordan was convicted of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and twenty-six counts of filing false tax returns and aiding and abetting the same, in violation of 26 U.S.C. § 7206(2) & 18 U.S.C. § 2. Challenging both his conviction and his 97-month sentence of imprisonment, Jordan raises three issues. First, he contends that the district court erred by denying his request for appointment of new counsel on appeal. Second, he contends that either the jury's verdict was not supported by sufficient evidence or that the verdict was contrary to the weight of the evidence. Third, Jordan contends that the district court erroneously accepted the government's account of a speculative and overstated amount of intended loss, which resulted in the application of a sentencing guidelines range that was too high.

## I.

At Jordan's request, his trial counsel moved to withdraw as counsel for his appeal. The district court denied that motion after conducting an in camera hearing with Jordan present. Jordan contends that the district court erred by denying his request for new counsel because that prevented him from raising an ineffective assistance of counsel claim on direct appeal.

"[E]xcept in the rare instance when the record is sufficiently developed, we

2

will not address claims for ineffective assistance of counsel on direct appeal."

United States v. Merrill, 513 F.3d 1293, 1308 (11th Cir. 2008) (quotation marks omitted). "Instead, an ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255." Id. (quotation marks and alteration omitted). The district court did not err by refusing to appoint new appellate counsel for Jordan. We would not have addressed an ineffective assistance claim in this direct appeal regardless of the counsel who represented him.

## II.

Jordan next contends that the district court erred by denying his motion for judgment of acquittal because the evidence was insufficient to support the jury's verdict.

> We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict. The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict. It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.

United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006) (citations omitted). In the alternative, he contends that the district court erred by denying his motion for a new trial. "The decision to grant or deny a new trial motion based on

3

the weight of the evidence is within the sound discretion of the trial court." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).

## A.

The government presented ample evidence that Jordan had committed the offenses as charged. The jury was instructed on the elements of the conspiracy claim and the substantive tax fraud claims, as well as the principles of aiding and abetting. The testimony of Jordan's two co-conspirators established that Jordan was involved in all aspects of Tax Tyme, the tax preparation business that he owned. He trained the co-conspirators on the tax preparation software, instructing them about methods for falsifying tax returns to get maximum refunds, personally preparing "phantom" returns using the names and identification of incarcerated persons, and e-filing each of the fraudulent returns identified by the IRS in its criminal investigation. Jordan's sister testified that he personally falsified information on the return he filed for her.

Jordan's knowledge of the extent of the tax fraud conspiracy was further demonstrated by testimony that he instructed his co-conspirators to remove from the Tax Tyme office any files that might reveal fraudulent activities. Finally, because Jordan testified in his own defense, the jury's rejection of his claims that he had no knowledge of the fraudulent scheme, that the scheme was entirely

4

accomplished by his co-conspirators, and that the government's witnesses had not testified truthfully, serves as additional substantive evidence of Jordan's guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). The district court did not err by denying Jordan's motion for judgment of acquittal.

## B.

Jordan also argues that based on the evidence presented the district court should have granted his motion for a new trial. Jordan has not shown that the evidence weighs "heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Martinez, 763 F.2d at 1313. Because the jury's verdict in this case was not contrary to the weight of the evidence, the district court did not err by denying Jordan's motion for a new trial.

## III.

Finally, Jordan contends that the amount of loss attributed to his crime is speculative and overstated, resulting in a guidelines range that is too high. He argues that the amount of tax loss determined at the sentence hearing was based on an educated guess about unaudited returns that were not individually verified. At the sentence hearing, the government called Special Agent Wilson of the IRS' criminal division, who testified that the intended loss was more than one million dollars. Under authorization from the district court, defense counsel had hired an

expert but had decided against having the expert testify at the hearing.

Agent Wilson based his loss calculation on the 2004 tax returns filed by Tax Tyme that showed no withholding tax. There were 592 of those no-withholding-tax returns, and most of them included only S.H.S. income.[1] Wilson testified that in his experience it "is highly extraordinary to have that many returns claim[ing] solely S.H.S. income out of one preparer shop." The 592 tax returns claimed a total of $2,172,869 in refunds, which Wilson believed was the amount of intended loss. To account for any returns that might not be fraudulent, however, Wilson explained that he took an "ultra conservative" approach and set aside one half of the 592 returns, not counting the refunds claimed on those returns in the total loss amount. Based on the remaining returns, he concluded that the intended loss was "in excess of a million dollars."

Crediting the testimony of Agent Wilson, the district court found by a preponderance of the evidence that the intended tax loss was over a million dollars. See United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009) ("When a defendant challenges one of the factual bases of his sentence the Government has the burden of establishing the disputed fact by a preponderance of the evidence.")

---

[1]Agent Wilson testified that S.H.S. income is household income typically reported by domestic workers who are paid less than $1,500 by any given employer. He stated that these workers do not receive W-2 or 1099 forms.

(quotation marks and alteration omitted). The court adopted the Presentence Report's findings that the offense level was 28, the criminal history was I, and the guidelines range was 78 to 97 months.[2] The court sentenced Jordan to 97 months imprisonment and a supervised release term of 3 years.

"We review the district court's loss determination for clear error." United States v. Cabrera, 172 F.3d 1287, 1292 (11th Cir. 1999). "The guidelines do not require the government to make a fraud loss determination with precision; the figure need only be a reasonable estimate given the information available to the government. Upon challenge, however, the government bears the burden of supporting its loss calculation with reliable and specific evidence." Id. (citation and quotation marks omitted). "[T]he tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). "In some instances, such as when indirect methods of proof are used, the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable

---

[2]The Presentence Report stated that the investigation had revealed an intended loss to the government of $2,172,869 and a known, actual loss of $93,544. It calculated a base offense level of 22 under the tax table at U.S.S.G. § 2T4.1 because the intended loss was greater than $1,000,000 but less than $2,500,000. Two levels were added under § 2T1.4(b)(1) because Jordan was in the business of preparing and assisting in the preparation of tax returns. Two more levels were added under § 3B1.1(c) because of Jordan's leading role in the offense as owner of Tax Tyme. Two more levels were added for obstruction of justice, resulting in a total offense level of 28.

estimate based on the available facts." Id. § 2T1.1 cmt. n.1.

The district court did not clearly err by finding that the tax loss in the present case was a million dollars or more. At the sentence hearing, the court heard testimony from Agent Wilson about how he calculated the tax loss based on a pattern of criminal conduct, which was also established through testimony at trial. See United States v. Saunders, 318 F.3d 1257, 1271 n.22 (11th Cir. 2003) ("The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing.") (quotation marks and alteration omitted). The district court credited Agent Wilson's testimony and found that Jordan had directed a scheme to defraud by filing false tax returns. It also found that Jordan, who testified at trial and at the sentence hearing, had "lied." See United States v. Gregg, 179 F.3d 1312, 1316 (11th Cir. 1999) ("We accord great deference to the district court's credibility determinations."). The record supports the district court's decision to credit the testimony establishing that the tax loss was over a million dollars.

**AFFIRMED.**