[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15151
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 4, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00049-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DON WARNER REINHARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 4, 2011)

Before EDMONDSON, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Don Reinhard was an apparently successful businessman who made millions of dollars investing other people's money. But Reinhard's investment business fell on hard times in the early 2000s, and amid allegations of mismanagement, he filed for bankruptcy in 2006. Two years later, after a lengthy investigation by the Internal Revenue Service, a federal grand jury returned a 23-count indictment charging Reinhard with bank fraud under 18 U.S.C. § 1014 and failing to disclose assets to the bankruptcy trustee, in violation of 18 U.S.C. § 152(3).[1] Reinhard pleaded guilty to both charges.[2]

The district court, after considering the U.S. Sentencing Guideline concerning victim losses, U.S.S.G. § 2B1.1(b)(1), increased Reinhard's offense level by 12, sentenced him at the top of the applicable guidelines range to 51 months in prison, and issued a restitution order.[3] In this appeal, Reinhard challenges the district court's application of § 2B1.1(b)(1) and presents two questions for our consideration.

---

[1] The indictment also charged violations of 18 U.S.C. §§ 2, 152(7), 1001(a), 1344, 1956(a)(1)(B)(i), and 2314, along with tax-related crimes under 26 U.S.C. § 7206(1)–(2).

[2] In exchange for the guilty plea on these counts and several others, the Government had the remaining charges in the indictment dismissed.

[3] The court also imposed a five-year term of supervised release, which Reinhard has not challenged on appeal.

First, after filing for bankruptcy in 2006, Reinhard failed to disclose that he owned three valuable glass sculptures. The works were appraised at $40,000 each in 2004, but one of them sold at auction for only $24,000 in 2007. Did the district court err by using the works' 2004 appraisal value to measure the bankruptcy estate's loss?

Second, Reinhard defaulted on a loan that his bank had modified in reliance on false documentation he submitted. Reinhard contends that the bank was going to lose money anyway before the loan was modified. Did the district court err by attributing the bank's loss to Reinhard's fraud? If so, was the corresponding order of restitution improper?

I

We begin our analysis with the loss attributable to Reinhard's bankruptcy fraud. The district court determined that the bankruptcy estate's loss on the undisclosed sculptures was $120,000: three times the $40,000 appraisal figure for each work.[4] The court's determination is a factual finding that we review for clear error. *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999).

---

[4] The specific appraisal figures were $38,000, $39,000, and $43,000.

3

Reinhard concedes that the estate's loss should be measured by the value of the undisclosed artworks,[5] but he argues that the district court clearly erred by relying on outdated appraisals in a sinking economy. He contends that the $24,000 auction price was a more appropriate measure of each work's value.

There is something to be said for Reinhard's argument, but we see no clear error in the district court's finding that the appraisals were a better measure of value. For one thing, just as the 2004 appraisals may have overstated the sculptures' 2006 value, the 2007 sale price may have understated the works' 2006 value. And although auction prices are often good indicators of market value, Reinhard sold the work at issue here online, through eBay. Unlike a gallery sale or live auction—in which buyers would have been able to see the sculpture in person—the online auction reduced the work to a flat, digital representation. The Government presented a reasonable estimate of the bankruptcy estate's loss,[6] and

---

[5] Reinhard halfheartedly argues that he should only be held responsible for loss associated with the one work he sold, but "loss" under U.S.S.G. § 2B1.1(b)(1) means "the greater of actual or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). On these facts, the district court reasonably found that by refusing to disclose his ownership of the works, Reinhard intended to deprive the bankruptcy estate of the value of all three.

[6] Cf. Cabrera, 172 F.3d at 1292 ("The guidelines do not require the government to make a fraud loss determination with precision; the figure need only be a reasonable estimate given the information available to the government.").

4

the court did not err by finding that formal appraisals were a better indication of value here than an online auction price.

II

With respect to Reinhard's bank fraud, the following facts were established before sentencing. Reinhard financed the purchase of a 2000 Sea Ray pleasure boat with a loan from SouthTrust Bank.[7] In 2003, Reinhard decided to reduce his debt-servicing burden by selling the Sea Ray and using the proceeds to buy a smaller 2004 Contender boat. To secure financing for the deal, Reinhard provided SouthTrust with what purported to be a copy of his 2001 federal tax return. Relying on that document, SouthTrust agreed to modify the terms of the original loan by accepting a $95,000 payment on the outstanding principal and substituting the Contender for the Sea Ray as collateral.

But the document Reinhard gave to the bank had never been filed with the IRS. Moreover, where the return he gave the bank showed $944,000 in adjusted gross income, the return he had actually filed reported only $389,000. According to an IRS investigator's conversation with the bank's president, had the bank been given Reinhard's *real* tax return, it never would have approved the loan

_____

[7] When Reinhard was sentenced, SouthTrust had become part of Wachovia.

5

modification.  And when Reinhard defaulted on the modified loan, SouthTrust was left with a deficiency of over $147,000.[8]

A. *Sentencing*

Reinhard contends that the bank was going to lose money regardless of whether it modified the loan, and he argues that the district court erred by attributing a loss that the bank would have incurred anyway (when he defaulted on the original loan) to his fraud.  The Government, on the other hand, insists that Reinhard should be held responsible for any loss that the bank incurred on the loan as modified.  In other words, the Government prefers a simpler loss calculation: "While it may be true that the bank was ultimately in a better position in relation to its loan to the defendant after the Contender transaction, the evidence established that the bank ultimately lost $147,240.76."  Appellee's Br. 21.

We are skeptical of the Government's argument,[9] but we need not decide the issue here.  In calculating the advisory range of sentences under the Guidelines, the district court increased Reinhard's offense level by 12 points because the total

---

[8] The outstanding balance on the loan was $213,158.84, and the Contender sold for $82,739.54, creating a true deficiency of $130,419.30.  But SouthTrust had to spend another $16,821.46 to retrieve the boat for sale, and for the sake of simplicity, we have combined these figures in our discussion of the $147,240.76 "deficiency."

[9] The only loss relevant to Reinhard's offense level under the Guidelines is "pecuniary harm that resulted *from the offense*."  U.S.S.G. § 2B1.1, comment. (n.3(A)(i)) (emphasis added).

loss attributable to his bank and bankruptcy frauds was $357,817, or between $200,000 and $400,000. *See* U.S.S.G. § 2B1.1(b)(1). In addition to the bank's $147,000 deficiency, that figure included the $120,000 bankruptcy loss associated with the undisclosed artworks and other, undisputed losses of over $90,000. Even if we concluded that the district court had erred by holding Reinhard responsible for the deficiency, the total loss would still exceed $210,000—which would warrant the same 12-point offense-level adjustment that the district court applied. Because a mistake on this point would not have affected Reinhard's sentence, any error was harmless. *See, e.g.*, *United States v. Raad*, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005).

B. *Restitution*

The district court also ordered Reinhard to pay the bank over $171,000 in restitution, which included the $147,000 deficiency along with interest and attorney's fees. The Mandatory Victims Restitution Act requires a sentencing court to order the defendant to compensate his victims for any financial losses "resulting" from his crimes. 18 U.S.C. § 3663A. The question here is whether the district court clearly erred in its finding that the bank's exposure to the deficiency resulted from Reinhard's fraud. *See United States v. Hasson*, 333 F.3d 1264, 1270

(11th Cir. 2003) ("We review factual findings underlying a restitution order for clear error.").[10]

In defense of the award, the Government adopts the same argument it made concerning loss under U.S.S.G. § 2B1.1(b)(1): Reinhard should pay for the bank's losses regardless of whether it "was ultimately in a better position in relation to its loan" after the modification. Appellee's Br. 21. But that simplistic approach would run afoul of express language in the Mandatory Victims Restitution Act, which authorizes restitution only for losses "resulting" from the "offense." 18 U.S.C. § 3663A(b)(1); *cf. United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004) ("A federal district court has 'no inherent authority to order restitution, and may do so only as explicitly empowered by statute.'" (quoting *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996))). Defaulting on a loan is not a crime, and holding Reinhard responsible for what the bank "ultimately" lost—even if the modification may have *saved* it money—would be to hold him responsible for loss resulting not from the offense itself, but from a preexisting and lawful business relationship.

---

[10] The Government argues that we should review the restitution award only for plain error because Reinhard did not specifically object to the award when it was imposed. We disagree. The district court derived the loss figure for the restitution award from the loss calculation under U.S.S.G. § 2B1.1(b)(1). Having failed to persuade the court on the latter issue, Reinhard was not required to raise the same objection again when the court ordered restitution.

Reinhard's offense was making false statements during his application for a loan modification.[11]  And the only loss that could fairly be said to have resulted from that offense is loss proximately caused by the modification itself, as opposed to the original loan.  As the district court said, "if there was a loss that was already going to be incurred anyway, then that's not attributable to the later fraud." Sentencing Tr. 6; *see also United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001) ("An award of restitution must be based on the amount of loss actually caused by the defendant's conduct.").

When the defendant challenges the amount of a victim's loss for the purposes of a restitution award, the Government bears the burden of proving that loss by a preponderance of the evidence.  18 U.S.C. § 3664(e).  Here, therefore, the Government had to prove that the bank's losses on the modified loan exceeded those the bank would have incurred when Reinhard defaulted on the original loan. The only evidence the Government produced on this point was testimony that the

---

[11] Specifically, Reinhard pleaded guilty to

knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any . . . loan, or any change or extension of the same, by . . . substitution of security therefor.

18 U.S.C. § 1014.

9

bank never would have modified the loan if it had known that Reinhard submitted a false tax return with his application.

On the other side of the scale was conflicting testimony from the same witness that the bank agreed to the modification "because it was actually reducing the bank's risk with respect to the [original] loan." Sentencing Tr. 49. And although the financial particulars of the modification are hazy, rough figures in the record support Reinhard's contention that the bank benefitted from the transaction. We know from the modification agreement, for instance, that the outstanding balance on the original loan was around $327,000. And testimony at the sentencing hearing revealed that Reinhard gave the bank $95,000 to facilitate the modification, under the terms of which the bank financed the purchase of a $265,000 boat with a $233,000 loan. This development not only reduced the bank's overall exposure; it also left the bank with a fully secured loan.

Although the deficiency when Reinhard defaulted means that the modified loan eventually *became* undersecured, the record does not support a finding that the modification left the bank undersecured at the outset. Accordingly, unless the loan was at least as oversecured before the modification as it was afterward, none of the bank's loss on the deficiency can be attributed to Reinhard's fraud. And by

failing to show that the modified loan was any riskier than the original,[12] the Government failed to present enough evidence to support the district court's finding that the bank's loss was properly charged to Reinhard's crime.

Notwithstanding the Government's failure to discharge its burden of proof on this issue, the district court concluded that *all* of the bank's loss on the deficiency resulted from the fraud. This finding not only discounted the possibility "that the bank was going to take a loss anyway," Sentencing Tr. 63, it also assumed, without any evidence, that the bank would have taken *no* loss if Reinhard had defaulted on the loan under its original terms. The record, at least in its current state, thus leaves us "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985), *quoted in United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007). This was clear error.

### III

Because the district court committed, at most, only harmless error with respect to the victim-loss calculations under the Guidelines, we affirm Reinhard's sentence. But in light of our conclusion that the court clearly erred in its finding

---

[12] In response to questioning by the district court, the Government's primary witness admitted that she "[didn't] know anything about the transaction of the big boat" that secured the original loan. Sentencing Tr. 58.

that Reinhard's bank fraud "result[ed] in damage or loss" to SouthTrust, 18 U.S.C. § 3663A(b)(1), we vacate the restitution award in favor of the bank and remand for further proceedings consistent with this opinion.[13]

**AFFIRMED in part, VACATED in part, and REMANDED.**

---

[13] The restitution award in favor of the IRS has not been challenged on appeal, and we leave it undisturbed.