**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 21, 2001
THOMAS K. KAHN
CLERK

No. 00-14134

D. C. Docket No. 99-00226-CR-T-26A

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IRA HARVEY LISS,
MICHAEL SPUZA,

Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Florida

(September 21, 2001)

Before TJOFLAT, DUBINA and DUHE*, Circuit Judges.

DUBINA, Circuit Judge:

_____

\*Honorable John M. Duhe, Jr., U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

Appellants Ira Harvey Liss ("Liss") and Michael Spuza ("Spuza")[1] appeal their convictions and sentences imposed by the United States District Court for the Middle District of Florida. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

The Community Clinical Laboratory, Inc. ("CCL"), was a Florida laboratory that conducted blood and urine testing. CCL and its employees developed a scheme to defraud Medicare by paying doctors to refer their Medicare patients to CCL in return for kickbacks from CCL. In order to pay the doctors for these referrals in a manner that appeared legal, CCL created a scheme of consulting agreements with doctors acting as Testing Review Officers ("TROs"). The TRO agreements purportedly allowed the doctors to authorize lab work for an individual if his or her own doctor was not available to do so. Thus, the TRO agreements served to disguise the kickbacks that were given in return for the patient referrals.

In November 1995, CCL entered into a consulting agreement with Liss, in which Liss agreed to act as a TRO in exchange for $1,000 a month. From November 1995 until April 1998, CCL paid Liss a total of $29,000. Liss did not receive any other form of compensation from CCL. Medicare reimbursed CCL

_____

[1] Liss and Spuza are medical doctors.

$183,847.31 as a result of Liss's referrals. The government concedes that all of those referrals were made for legitimate medical reasons.

In August 1996, CCL entered into a consulting agreement with Spuza, in which Spuza agreed to act as a TRO in exchange for $600 a month. From August 1996 until April 1998, CCL paid Spuza $12,000 for his TRO services. In addition to the TRO payments, CCL made 28 equipment sublease payments on behalf of Spuza and his mother, Dr. Felicia Spuza, who operated the practice jointly with Spuza. These sublease payments totaled $33,679.80. CCL also made office rental payments for the Spuzas. These rental payments totaled $9,691.56. The presentence investigation report ("PSI") reflects that CCL paid Spuza a total of $55,371.36. Medicare reimbursed CCL $269,004.73 as a result of the referrals made by the Spuzas. It is undisputed that those referrals were made for legitimate medical reasons.

A superceding indictment charged Liss and Spuza with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and five counts of receiving remuneration in return for Medicare referrals, in violation of 42 U.S.C. § 1320a-7b(b)(1). At Liss and Spuza's joint trial, Vincent Gepp ("Gepp"), a CCL sales representative, testified that the way in which CCL paid the illegal kickbacks included payments for the TRO agreements and office and equipment rentals. Gepp also testified that CCL made payments for office space and

3

equipment in exchange for Spuza referring his patients to CCL for laboratory work.  The jury found Liss and Spuza guilty on all counts.

The PSI combined all counts into a single group because the offense level was to be determined by the total amount of harm or loss, pursuant to U.S.S.G. § 2D1.2(d).  The PSI also assigned Liss and Spuza a base offense level of eight based on U.S.S.G. § 2B4.1, which is the guideline for fraud or deceit.  For Liss, the PSI relied on U.S.S.G. § 2F1.1(b)(1)(E) and added four levels to reflect the $29,000 amount in illegal kickbacks.  For Spuza, the PSI added five levels to reflect the $55,371.36 amount in illegal kickbacks, pursuant to U.S.S.G. § 2F1.1(b)(1)(F).  The PSI then added two levels to both Liss and Spuza's sentences under U.S.S.G. § 3B1.3, asserting that they had breached the trust of Medicare by accepting illegal compensation for Medicare referrals.  The PSI assigned another two-level increase to Liss for obstruction of justice, contending that Liss committed perjury at trial.  This resulted in a total offense level of 16 for Liss.  Based on Liss's absence of a criminal background, the PSI did not assess any criminal history points.  This resulted in a criminal history category of I and a guideline range of 21-27 months imprisonment for Liss.  Likewise, based on Spuza's absence of a criminal background, the PSI did not assess any criminal history points.  This resulted in a criminal history category of I and a guideline range of 18-24 months for Spuza.  Pursuant to 18 U.S.C. § 3663A, the PSI set

4

restitution in Liss's case in the amount of $29,000. For Spuza, restitution was set in the amount of $55,371.36.

At sentencing, the district court heard extensive arguments on Liss's objection to the enhancement for abuse of trust. Liss asserted that the abuse of trust enhancement should not be applied in his case because, under Eleventh Circuit case law, he did not occupy a position of trust vis-a-vis Medicare, and even if he did occupy such a position, his conduct did not constitute an abuse of trust because he did not falsify records or submit fraudulent documents to Medicare. The district court overruled Liss's objection, finding that physicians likely occupy positions of trust with regard to Medicare.

The district court sustained Liss's objection to the obstruction of justice enhancement, concluding that, based on its recollection of Liss's trial testimony, it was not convinced that Liss had obstructed justice. The district court overruled Liss's objection as to restitution. Finally, Liss offered testimony in support of his motion for a downward departure, alleging that he was entitled to a downward departure on the grounds of (1) physical health, (2) family ties, (3) contribution to the community, and (4) lesser harms. The district court denied Liss's motion as to each ground, finding that none of the grounds, even combined, warranted a departure. The district court sentenced Liss to 15 months imprisonment on each

count, to run concurrently, and ordered Liss to pay a fine of $5,000, and restitution in the amount of $29,000.

Spuza objected to the PSI, claiming that the PSI's factual account should not include information regarding other individuals' offenses. Spuza made the same objection as Liss concerning the enhancement for abuse of trust, arguing that, under Eleventh Circuit case law, the enhancement was unwarranted. Spuza also contested the inclusion of the office rent and equipment sublease payments as remuneration under § 2B4.1. He argued that those payments were legitimate and that he had received no funds from CCL for the equipment sublease because CCL paid the bank directly. Spuza further opposed the imposition of restitution, maintaining that Medicare did not suffer any loss attributable to his receipt of kickbacks from CCL. Finally, Spuza claimed that he was entitled to a downward departure under U.S.S.G. § 5K2.11 because his conduct did not cause the kind of harm that the anti-kickback statute sought to prevent.

With regard to Spuza's argument that the office rental and equipment sublease payments should not be included in the calculation under § 2B4.1, the district court found that there was sufficient evidence to show that those payments constituted remuneration within the meaning of the statute. Spuza then contested the amount of remuneration, contending that even if the equipment sublease payments were remuneration, he should not be accountable for more than half of

6

the total amount because the equipment sublease ran from CCL to his mother, who owned half of the medical practice. The district court overruled Spuza's objection as to the amount or value of the remuneration for both payments, agreeing with the government's position that Spuza was liable for the full amount based on the language in the anti-kickback statute. In regard to Spuza's objection to receiving an enhancement for abuse of trust, the court stated that it had already decided this issue contrary to Spuza's position when it applied the enhancement in Liss's case. The district court also overruled Spuza's objection concerning restitution, reluctantly finding that this circuit's decision in *United States v. Vaghela*, 169 F.3d 729, 736 (11th Cir. 1999), was controlling.

After hearing from Spuza, the district court overruled the government's objection that Spuza should have received an enhancement for his role in the offense, finding that there was no basis for the enhancement. The district court also heard extensive arguments from Spuza as to why he was entitled to a downward departure pursuant to U.S.S.G. § 5K2.11. Spuza's primary argument was based on the proposition that his conduct did not cause the kind of harm contemplated by the statute. Spuza also contested the government's assertion that the plain language of the statute was aimed at preventing the receipt of kickbacks for patient referrals, which was exactly what Spuza had done. The district court denied Spuza's motion, finding that the statute was clear on its face that you shall

7

not refer for kickbacks. Consequently, the district court sentenced Spuza to 18 months imprisonment on each count, to run concurrently, and ordered that Spuza pay restitution in the amount of $55,371.36.

Liss and Spuza then perfected their appeals.

## II. ISSUES

A. Liss

(1) Whether the district court erred in denying Liss's motion to sever.

(2) Whether the district court erred in denying Liss's motion to dismiss the superseding indictment's single conspiracy charge.

(3) Whether the district court erred in applying an abuse of trust enhancement to Liss's sentence.

B. Spuza

(1) Whether Spuza is entitled to a new trial because he was misjoined for trial with alleged co-conspirator Liss and their trials should have been severed.

(2) Whether the district court erred in applying the sentencing guidelines by including the office rental and equipment sublease payments in its calculation of the amount of loss.

(3) Whether the district court erred by imposing an upward adjustment for abuse of trust.

8

(4) Whether the district court erred by concluding it lacked the authority to consider a downward departure for lesser harms under U.S.S.G. § 5K2.11.

(5) Whether the district court erred by ordering Spuza to pay restitution to the government.

### III. STANDARDS OF REVIEW

A claim under Rule 8(b) of the Federal Rules of Criminal Procedure is considered a question of law subject to plenary review. *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996). A defendant must show actual prejudice through a substantial and injurious effect on the jury's verdict before he can obtain a new trial. *United States v. Lane*, 474 U.S. 438, 449 (1986).

In contrast, we review for abuse of discretion a motion for severance filed under Rule 14 of the Federal Rules of Criminal Procedure. *United States v. Schlei*, 122 F.3d 944, 983 (11th Cir. 1997). To obtain a reversal on the basis of the denial of a severance motion, the defendant must demonstrate that the joint trial resulted in specific and compelling prejudice to the conduct of his defense. *Id.* at 983-84.

This court reviews a district court's findings of fact regarding sentencing for clear error and the district court's application of those facts to the sentencing guidelines *de novo*. *United States v. Smith*, 127 F.3d 1388, 1389 (11th Cir. 1997).

We review a restitution order for abuse of discretion. *United States v. Davis*, 117 F.3d 459, 462 (11th Cir. 1997).

This court has no jurisdiction to review a sentencing judge's denial of a downward departure unless it was made based upon belief that he or she did not possess the discretionary authority to depart downward. *United States v. Calderon*, 127 F.3d 1314, 1342 (11th Cir. 1997).

## IV. DISCUSSION

### A. Misjoinder/Severance

Liss and Spuza argue that they were misjoined in count one of the superseding indictment, and that the district court should have severed their trials.

Federal Rule of Criminal Procedure 8(b) is a pleading rule. *United States v. Morales*, 868 F.2d 1562, 1567-68 (11th Cir. 1989). The rule permits two or more defendants to be charged in the same indictment if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). Therefore, joinder under Rule 8(b) is proper "where, as here, an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy." *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985). The propriety of joinder "is to be determined before trial by examining the allegations contained in the indictment." *Morales*, 868 F.2d at 1567-68.

10

Count one of the superseding indictment charged Liss and Spuza with conspiring with CCL and other defendants to defraud the United States by obtaining kickbacks for the referral of Medicare patients. Thus, under Rule 8(b), Liss and Spuza were properly charged in the same indictment. *See Morales*, 868 F.2d at 1569-70 (concluding that joinder of parties was proper under Rule 8(b) because the indictment named all defendants-appellants in single conspiracy count).

Although Liss purports to challenge his joinder with Spuza in count one, Liss does not even refer to the allegations in count one, let alone argue that those allegations do not charge his and Spuza's participation in the same offense. Rather, he argues that the evidence at trial did not support a finding that he and Spuza participated in the same conspiracy. The trial evidence, however, may not be used to establish that joinder under Rule 8(b) was improper. *See Morales*, 868 F.2d at 1568; *see also United States v. Dominguez*, 226 F.3d 1235, 1240 (11th Cir. 2000) (noting that this court looks only to the indictment in order to determine if the appellants' initial joinder was proper under Rule 8(b)). Given the allegations in the indictment, we conclude there was no Rule 8(b) violation in this case, and, even if there had been such a violation, it would have been harmless because the defendants can not show that their joint trial resulted in actual prejudice; i.e., that it

had a substantial and injurious effect or influence in determining the jury's verdict. *See Lane*, 474 U.S. 438 at 449.

Likewise, we conclude that the defendants were not entitled to a severance and that the district court did not err in denying their motions. Severance under Rule 14 of the Federal Rules of Criminal Procedure is warranted only when a defendant demonstrates that a joint trial will result in "specific and compelling prejudice" to his defense. *United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983). Compelling prejudice occurs when the jury is unable "to separately appraise the evidence as to each defendant and render a fair and impartial verdict." *United States v. Meester*, 762 F.2d 867, 883 (11th Cir. 1985).

After reviewing the record, we conclude that neither Liss nor Spuza suffered compelling prejudice from their joint trial. There was no reasonable likelihood that the jury transferred the applicability of evidence from Liss to Spuza or vice-versa. Liss and Spuza were the only two defendants on trial, only two types of charges were at issue (conspiracy and receiving kickbacks), and the evidence as to each separate charge and defendant was distinct, clear, and uncomplicated. Moreover, the district court cautioned the jury to assess the evidence independently for each count and each defendant, thus further ameliorating the possibility of prejudice. Indeed, Liss and Spuza acknowledge that the key witnesses against Liss (CCL sales representative Richard Holt and CCL owner James McCowan, Jr.) were

12

different from the key witnesses against Spuza (CCL sales representative Vincent Gepp, and Rule 404(b) witnesses Ethan Schlau and Jason Welles). Defendants further acknowledge that the only common witness was the Medicare representative who testified about the number of referrals Liss and Spuza made to CCL. Given the virtually distinct evidence as to Liss and Spuza, they could not have suffered compelling prejudice from being tried jointly.

In conclusion, we see no merit to any of the arguments Liss and Spuza make concerning this issue.

B. Enhancement for Abuse of Position of Trust

Liss and Spuza argue that the district court erred in enhancing their respective offense levels by two levels each. The enhancements were assessed for abuse of a position of trust or use of a special skill, pursuant to U.S.S.G. § 3B1.3. The abuse of trust enhancement presents a question of first impression in this circuit.[2]

---

[2] *United States v. Garcia*, 211 F.3d 128 (11th Cir. 2000) (Table), is an unpublished opinion directly on point because it involved a physician who obtained fraudulent Medicare reimbursement. In *Garcia*, we held that "[t]he district court could properly have found that Garcia was just that discretion-possession physician (or, in this case, psychiatrist) that section 3B1.3 envision[ed]; it was the trust that Medicare proposed in Garcia as a medical professional that permitted him to oversee the falsification of patient-treatment records to accomplish the fraud." *Id.* (internal marks and citations omitted). Although *Garcia* represents persuasive authority, it is not binding precedent. *See* 11th Cir. R. 36-2. Therefore, we consider the issue before us to be one of first impression.

In *United States v. Garrison*, 133 F.3d 831 (11ᵗʰ Cir. 1998), we held that "[f]or the enhancement to apply, defendant must have been in the position of trust with respect to the victim of the crime, and the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." *Id.* at 837 (internal marks and citations omitted). We went on to hold that "the abuse of trust enhancement applies only where the defendant has abused discretionary authority entrusted to the defendant by the victim; arm's-length business relationships are not available for the application of this enhancement." *Id.* at 839 (internal marks and citations omitted).

Of the other circuits that have addressed whether a physician occupies a position of trust in relation to Medicare, or a private insurance carrier, all have answered that question in the affirmative. *See United States v. Ntshona*, 156 F.3d 318, 321 (2d Cir. 1998) (upholding abuse of trust enhancement where a physician defrauded Medicare by signing false claims); *United States v. Sherman*, 160 F.3d 967, 969-71 (3d Cir. 1998) (upholding abuse of trust enhancement based on physician's abuse of trust with respect to defrauded insurance company); *United States v. Adam,* 70 F.3d 776, 782 (4ᵗʰ Cir. 1995) (upholding abuse of trust enhancement for an internist who took illegal kickbacks from a cardiologist in exchange for patient referrals); *United States v. Iloani*, 143 F.3d 921, 922-23 (5ᵗʰ Cir. 1998) (upholding abuse of trust enhancement based on chiropractor's position

14

of trust with respect to insurance company, where a chiropractor conspired with patients to submit fraudulent bills to insurance companies); *United States v. Hoogenboom*, 209 F.3d 665, 671 (7th Cir. 2000) (upholding abuse of trust enhancement for psychologist who billed Medicare for services that had not been performed or services not performed as billed); *United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir. 1997) (upholding abuse of trust enhancement for ophthalmologist who made false entries in his medical records in effecting Medicare fraud).

Of the circuits noted above, only the Fourth Circuit has addressed the identical factual question presented here; i.e., assuming that a physician does occupy a position of trust, vis-a-vis Medicare, does the physician abuse that position of trust when the physician receives kickbacks for patient referrals, where the referrals were medically necessary and the physician does not falsify patient records or submit fraudulent claims to Medicare? *See Adam*, 70 F.3d at 782. After considering the applicable law and the special position that physicians hold within the Medicare system, the Fourth Circuit answered this question in the affirmative. *Id.* Suffice it to say that we agree with the Fourth Circuit's analysis in *Adam* and adopt its analysis and holding. For that reason, we affirm the two-level enhancement for abuse of a position of trust.

C. Office Rental and Equipment Sublease Payments

Spuza argues that the district court erred in including the office rental and equipment sublease payments in its calculation of the amount of loss, pursuant to U.S.S.G. § 2B4.1, because neither of the above-mentioned payments represented remuneration in exchange for kickbacks, but rather were payments under legitimate fair market agreements. Spuza also argues that the government failed to meet its preponderance burden with regard to the enhancement because no evidence supported the conclusion that these payments were kickbacks. Spuza further argues that, even if the payments were found to be remuneration for patient referrals, the government failed to carry its burden to show that the value to Spuza of the equipment subleases was $33,379.80 because: (1) he was not responsible for the lease, rather it ran from the bank to his mother; (2) he owned only half of the medical practice, and thus would have received only half the value; (3) it was improper to calculate the value simply by adding up all payments CCL made to the bank; and (4) the proper inquiry was what the value was to Spuza of alleviating his mother's liability on the lease.

The government responds that the district court did not clearly err in finding that both of these categories of payments constituted kickbacks because the evidence established that all of the agreements between CCL and Spuza were subterfuges for the overall agreement to pay kickbacks in exchange for patient referrals. It also contends that the district court properly rejected Spuza's claim

16

that the value of the kickbacks was overstated because, even though Spuza's mother owned half of the medical practice and was on the equipment lease, Spuza still benefitted by CCL's payments because the debt of the medical practice was reduced.

The Sentencing Guidelines set a base offense level of eight for cases involving the offer or acceptance of payment to refer an individual for services or items paid for by Medicare. U.S.S.G. § 2B4.1(a), comment. (backg'd). The base offense level is then increased according to the table in § 2F1.1 when "the greater of the value of the bribe or the improper benefit to be conferred exceed[s] $2,000." U.S.S.G. § 2B4.1(b)(1). This amount of loss, however, "need not be determined with precision [and] [t]he court need only make a reasonable estimate of loss, given the available information." U.S.S.G. § 2F1.1, comment. (n.9). "Upon challenge, however, the government bears the burden of supporting its loss calculation with reliable and specific evidence." *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999) (internal marks and citations omitted). "When a defendant challenges one of the bases of his sentence as set forth in the PS[I], the government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995). "A sentencing court must make factual findings sufficient to support the government's claim of the amount of fraud loss attributed to a defendant in a PSI."

17

*Cabrera*, 172 F.3d at 1294. This court reviews for clear error a district court's determination of loss from fraud for sentencing purposes. *Id.* at 1292.

Here, the district judge, who presided over Spuza's trial and sentencing, concluded that there was sufficient evidence to show that the payments for office and equipment rental constituted remuneration within the statute. The record supports the district court's conclusion because Gepp testified at trial that CCL's payments for office space and equipment were made in exchange for Spuza referring his patients to CCL for laboratory work. The district court, therefore, did not clearly err by finding that these payments were remuneration. Once Spuza objected to the amount attributed to the equipment sublease payments, however, the government was required to support its loss calculation with reliable and specific information, *see Cabrera*, 172 F.3d at 1292, and the district court was required to make factual findings sufficient to support the government's claim that the amount of fraud loss attributed to Spuza was that which was contained in the PSI. *See id.* at 1294.

The only information that the government provided regarding its calculation was that contained in the PSI. The government then referenced the language of the anti-kickback statute in support of its proposition that Spuza was required to pay the full amounts that CCL had paid on the office rent and equipment subleases. The district court made no factual findings in support of the government's claim;

18

rather, it stated that it agreed with the government's position that Spuza was liable for the full amount based on the language in the anti-kickback statute. Although the district court did not clearly err by finding that the payments for office space and equipment were in fact remuneration for referrals, we conclude that it did fail to make sufficient factual findings regarding the amount of loss as detailed in the PSI. *See id.* Accordingly, we must vacate the district court's finding as to the value or amount attributed under § 2F4.1 in regard to the equipment sublease payments, and remand to the district court for further findings.

D. Downward Departure

A district court's refusal to depart downward from the sentencing guideline range normally is not reviewable on appeal, unless the district court denied the departure because it erroneously believed that it had no authority to depart downward. *United States v. Rudisill*, 187 F.3d 1260, 1265 (11th Cir. 1999). After reviewing the record, we conclude that the district court fully understood that § 5K2.11 authorizes downward departures in limited circumstances. However, the court determined that Spuza's conduct did not warrant a downward departure. Accordingly, the district court's decision is unreviewable by this court. *See Rudisill*, 187 F.3d at 1265-66.

E. Restitution

19

Spuza contends that the district court erred by ordering him to pay restitution in the amount of the kickbacks that he received from CCL because the government offered no evidence to suggest that the Medicare program suffered any loss attributable to his receipt of remuneration from CCL. Spuza also argues that this circuit's decision in *United States v. Vaghela*, 169 F.3d 729 (11th Cir. 1999), is not controlling because in that case Vaghela conceded that he owed restitution in the amount of kickbacks that he had received. Spuza also argues that because all of the referrals that he made to CCL were medically necessary, and because he was not involved in fraudulent billing, it was error to assume that Medicare suffered a loss based on his offense conduct.

An award of restitution must be based on the amount of loss actually caused by the defendant's conduct. *See United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999). The government bears the burden of proving the amount of the loss. 18 U.S.C. § 3664(e); *United States v. McIntosh*, 198 F.3d 995, 1003 (7th Cir. 2000).

In the present case, the government has offered no evidence to suggest that the Medicare program suffered any loss attributable to Spuza's receipt of remuneration from CCL. Medicare paid CCL a fixed amount for its tests. The amount paid by Medicare to CCL was not affected by what CCL did with the money it received. Although CCL may owe restitution if it fraudulently billed for

20

the services allegedly referred by Spuza, billing fraud is not a part of Spuza's offense conduct.

Our decision in *Vaghela* is not controlling because in that case the defendant conceded he owed restitution in the amount of the kickbacks he received. 169 F.3d at 736. All of the parties in *Vaghela* apparently assumed that a loss resulted from the offense conduct. *See id.* There is no basis for such an assumption here because the medical necessity of the referrals is unquestioned. Accordingly, we must vacate the district court's restitution order.[3]

In conclusion, we affirm Liss's and Spuza's convictions and Liss's sentences. We vacate Spuza's sentences and remand this case to the district court for resentencing consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.

---

[3] As previously discussed, only the Fourth Circuit has addressed a context factually similar to that of the instant appeal; i.e., a physician who received illegal kickbacks in exchange for Medicare patient referrals. *See United States v. Adam,* 70 F.3d 776, 782 (4th Cir. 1995). It is noteworthy, that in *Adam*, the district court sentenced Adam to 18 months imprisonment and assessed a $40,000 fine. *Id.* at 779. Although the district court increased Adam's base offense level, pursuant to U.S.S.G. § 2F1.1(b)(1)(F), for the amount of loss (which included the amount of kickbacks), the court's order made no mention of restitution. *Id.* at 778-79.