[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11801
Non-Argument Calendar

_____

D.C. Docket No. 9:13-cr-80108-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON JEROME JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 5, 2015)

Before HULL, WILSON, and BLACK, Circuit Judges.

PER CURIAM:

Brandon Jerome James appeals his 81-month total sentence after pleading guilty to one count of conspiracy to steal money from the United States, in violation of 18 U.S.C. § 371; one count of theft of government funds, in violation of 18 U.S.C. § 641; and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.

Upon review of the record and after careful consideration of the parties' briefs, we affirm.

## I.

James was one of several individuals involved in a complex scheme to defraud the United States Treasury using stolen names and social security numbers. On August 31, 2012, police officers in Boca Raton, Florida stopped a vehicle James was driving. Eric Quincy Fussell and Laron Lanece Larkin were passengers. James and Fussell were arrested on outstanding warrants. Larkin was arrested for loitering and prowling.

The officer's search of the vehicle incident to arrest revealed a Netspend visa debit card that was wrapped in cardboard with the name, social security number, date of birth, and address of another individual written on the cardboard in Larkin's purse. Officers also found, among other things, photocopied drivers licenses and social security cards that belonged to unknown individuals. In James's wallet, officers located additional cardboard-wrapped debit cards with

2

personal information written on them.  A complete search of the vehicle revealed more cardboard-wrapped debit cards, $4,700.00 in cash, and a disposable cell phone.

The investigation established that the scheme involved claiming tax refunds using the names of real people and channeling the tax refunds from the Internal Revenue Service (IRS) to the Netspend pre-purchased debit cards.  Fussell and James secured the stolen identities, while James recruited Larkin to withdraw the tax refunds from several ATM machines throughout Florida.  James divided the money based on each person's respective responsibly.  James received the most money because he was responsible for channeling the tax refunds to the debit cards.

Further investigation revealed that a total of $73,422.00 was deposited onto the debit cards that were recovered from the vehicle.  Records from the IRS revealed an extensive pattern of fraudulent filings associated with the debit cards and the disposable cell phone found in the vehicle.  These records confirmed that James and his co-conspirators had intended to obtain a total amount of $862,643.00 in tax refunds from a total of 121 victims.  Before the scheme was discovered, the IRS released $383,484.00 in tax refunds.

On appeal, James raises five arguments.  First, he argues that the district court erred by attributing $862,643.00 in loss and 121 victims to him at sentencing.

3

Second, he argues that the district court erred by applying a sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C).  Third, he argues that the district court erred by failing to apply a mitigating role reduction pursuant to U.S.S.G. § 3B1.2(b), despite his failure to request such a reduction at sentencing. Fourth, he argues that the district court erred, both in a constitutional and evidentiary sense, by applying an aggravating role enhancement to him pursuant to U.S.S.G. § 3B1.1(c).  Finally, he argues that the district court erred in denying his request for a downward variance, and that the imposed total sentence was therefore unreasonable.

For ease of reference, we will address each point in turn.

## II.

First, we address James's argument that the district court erred when it attributed $862,643.00 in loss and 121 victims to him at sentencing.  We review the district court's determination of the amount of loss and the number of victims for clear error.  *United States v. Liss*, 265 F.3d 1220, 1230 (11th Cir. 2001) (amount of loss); *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013) (number of victims).

The Sentencing Guidelines apply a base offense level, and then increase the level based on the value of the loss caused.  U.S.S.G. § 2B1.1(a), (b)(1).  A four-level enhancement applies if the offense involved more than 50, but fewer than 250

4

victims. *Id.* § 2B1.1(b)(2)(B).  The sentencing court is only required to make a reasonable estimate of the loss suffered, and a "sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." *Id.* § 2B1.1 cmt. n.3(C).  When a defendant challenges the attributed loss or the number of victims, the government must provide evidence to establish the loss, and the court must make factual findings sufficient to support its conclusions. *Liss*, 265 F.3d at 1230; *Rodriguez*, 732 F.3d at 1305.

The Guidelines advise the court to use the greater of actual or intended loss. U.S.S.G. § 2B1.1 cmt. n.3(A).  Proper calculation requires consideration of all the acts and omissions that were part of the same scheme. *United States v. Rodriguez*, 751 F.3d 1244, 1256 (11th Cir.), *cert. denied*, 135 S. Ct. 310 (2014).  "A participant in a conspiracy may thus be held responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *Id.* (internal quotation marks omitted).

The evidence produced by the government indicated that all 121 fraudulent tax returns and all 121 fraudulent debit card accounts were part of the same conspiracy.  The evidence also demonstrated that, had all 121 refunds been issued, the loss to the United States Treasury would have been $862,643.00.  This intended loss was readily ascertainable based on the tax records from the IRS, and, therefore, the court correctly used that number. *See* U.S.S.G. § 2B1.1 cmt. n.3(C).

5

Furthermore, it should be noted that whether James personally stole all of the identifying information, opened all of the accounts, or filed all of the tax returns is of no significance. *See Rodriguez*, 751 F.3d at 1256. These acts were all reasonably foreseeable acts that occurred in furtherance of the same conspiracy; James's participation in the conspiracy made him accountable for all of them. *See id.* We conclude that the district court did not clearly err in attributing $862,643.00 in loss and 121 victims to James at sentencing.

### III.

Next, we address James's argument that the district court erred when it applied a sophisticated means enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(C). Generally, we review application of a sophisticated means enhancement for clear error. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). However, issues raised for the first time on appeal are reviewed for plain error only. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). The parties disagree about whether James properly preserved the issue below, but it is unnecessary for us to resolve this question because James's argument fails even under the clear error standard.

The Guidelines provide for a two-level enhancement if the offense in question "involved sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). This enhancement applies to especially complex or especially intricate conduct

6

pertaining to the execution or concealment of an offense.  *Id.* § 2B1.1 cmt. n.9(B).

"There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement.  Rather, it is sufficient if the totality of the scheme was sophisticated."  *Ghertler*, 605 F.3d at 1267.

While the district court did not explicitly mention the sophisticated means enhancement, it did respond directly to James's arguments concerning the complexity of the conspiracy.  In doing so, the district court noted that the conspiracy involved the combination of two different crimes; identity theft and tax fraud.  The district court explained that James and his co-conspirators took advantage of the Treasury's ability to quickly refund tax money to its taxpayers through the means of identity theft and the unauthorized use of other personal and sensitive information.  In addition, the undisputed evidence establishes that James and his co-conspirators went to great lengths to conceal their criminal activity.  Specifically, James and his co-conspirators used disposable cell phones, opened false debit accounts, recruited Larkin to retrieve the money from the ATMs, and traveled throughout Florida to conceal the commission of these fraudulent acts.  The factual question, as to whether James's role was limited to acquiring debit cards and cashing them out, is insignificant because the court looks to the criminal conspiracy as a whole.  *Ghertler*, 605 F.3d at 1267.  When viewed in its entirety, the conspiracy was complex and sophisticated; both in its execution and in its

7

concealment.   Accordingly, the evidence supports the district court's application of the sophisticated means element.

## IV.

Next, we confront James's argument that that the district court erred by failing to apply a mitigating role reduction pursuant to U.S.S.G. § 3B1.2(b), despite his failure to request such a reduction at sentencing.  Generally, whether a defendant is a minor participant is a finding of fact, reviewed on appeal for clear error.  *United States v. Rodriguez De Varon*, 175 F.3d 930, 937–38 (11th Cir. 1999) (en banc).  As noted above, however, issues raised for the first time on appeal are reviewed for plain error only.  *Rodriguez*, 398 F.3d at 1298.  Error is not plain unless it is clear or obvious under current law.  *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777 (1993).

The Sentencing Guidelines provide for a two-level reduction when a defendant was a minor participant in the criminal activity.  U.S.S.G. § 3B1.2(b).  A minor participant is one whose behavior is less culpable than that of most other participants, "but whose role could not be described as minimal."  *Id.* § 3B1.2 cmt. n.5.  It is the defendant's burden to substantiate the minor role reduction by a preponderance of evidence.  *Rodriguez*, 751 F.3d at 1258.  To determine whether a two level reduction for a minor role is appropriate, the district court must consider the following: "1) the defendant's role measured against the relevant conduct for

which [he] has been held accountable at sentencing; and 2) [his] role as compared to other participants in that relevant conduct." *Id*.

We have never vacated a sentence as unreasonable because the district court failed to sua sponte apply a minor role reduction, and there is no law that would require a district court to do so. For this reason, there cannot be plain error. *Olano*, 507 U.S. at 734, 113 S. Ct. at 1777. In any event, a thorough examination of the record does not indicate that a mitigating role reduction was warranted, or for that matter, even reasonable. The undisputed evidence indicated that James played a significant role in the conspiracy. James was responsible for channeling the tax refunds to the debit cards, traveling to various ATM machines across Florida to withdraw the cash proceeds, and dividing the proceeds between each co-conspirator based on their respective responsibility. Plainly stated, the conspiracy's success was, in large part, contingent upon James's conduct. Consequently, James's conduct cannot be described as conduct that was less culpable than his co-conspirators conduct; nor can it be characterized as minimal. We therefore cannot conclude that the district court, by failing to apply a mitigating role reduction under these circumstances, plainly erred.

V.

Next, we consider James's argument that the district court erred, both in a constitutional and evidentiary sense, by applying an aggravating role enhancement

9

to him pursuant to U.S.S.G. § 3B1.1(c).  We review constitutional issues de novo; however, we will "reverse only for plain error where the defendant fails to object at the district court."  *United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006) (per curiam).  A defendant's role as an organizer or leader is a factual finding that we review for clear error.  *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005) (per curiam).

A district court may find facts such as an aggravating role "at sentencing so long as the judicial factfinding does not increase the defendant's sentence beyond the *statutory* maximum triggered by the facts conceded or found by a jury beyond a reasonable doubt."  *Ghertler*, 605 F.3d at 1268 (internal quotation marks omitted).  The Sentencing Guidelines provide for a two-level enhancement when a defendant was an organizer, leader, manager, or supervisor in the criminal activity.  U.S.S.G. § 3B1.1(c).  This section applies to a participant who supervised or managed "one or more other participants."  *Id.* § 3B1.1 cmt. n.2.  Factors that are considered to determine whether this enhancement is appropriate are "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and

10

authority exercised over others." *Ramirez*, 426 F.3d at 1355 (internal quotation marks omitted).

James's constitutional argument fails. Our precedent is clear that because the aggravating role found by the district court did not increase his total sentence beyond the statutory maximum established by the facts conceded to by James; there was no constitutional violation, and, therefore, no error. See *Ghertler*, 605 F.3d at 1268.

In an evidentiary sense, James's argument lacks persuasive luster as well. As previously stated, the record reflects that James exercised power and decision-making authority over the cashing out of the debit cards, was in charge of an entire aspect of the offense, recruited Larkin as an accomplice and exercised authority and control over her, selected the ATMs to be used, received a larger share of the fraudulent proceeds, and, ultimately, played a major role in a complex and well devised conspiracy to perpetrate tax fraud and identity theft. Therefore, the evidence clearly supported the district court's decision to apply an aggravating role enhancement because § 3B1.1(c) applied to his behavior. *See Ramirez*, 426 F.3d at 1355 (defendant does not have to be the only leader or even the main kingpin of the conspiracy to be considered a leader or organizer within the meaning of the guidelines). For these reasons, the district court did not err by applying an aggravating role enhancement.

VI.

Finally, we address James's argument that the district court erred in denying his request for a downward variance and that the imposed total sentence was therefore unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The district court's denial of a defendant's request for a variance is subsumed under that review. *See United States v. Willis*, 560 F.3d 1246, 1251 (11th Cir. 2009) (per curiam) (reviewing the reasonableness of the district court's denial of the defendant's motion for variance by examining the sentence itself).

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including "the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2); *see also United States v. Booker*, 543 U.S. 220, 259–60, 125 S. Ct. 738, 764–65 (2005). The weight given to any specific factor is generally committed to the discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). The court's attachment of great weight to a single factor is not necessarily reversible error, although a "district court's unjustified reliance on a single § 3553(a) factor may be a 'symptom' of an

12

unreasonable sentence." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (per curiam).  A district court can err by unreasonably weighing the § 3553(a) factors and arriving at an unreasonable sentence given the facts of the case.  *United States v. Irey*, 612 F.3d 1160, 1189–90 (11th Cir. 2010) (en banc).

In imposing a particular sentence, the court must also consider, in addition to the purposes listed in § 3553(a)(2), the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victim.  *Id.* § 3553(a)(1), (3)–(7).  The law does not require the court to discuss these factors, or even explicitly state that it has considered them.  *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).  If the court does explicitly state that it considered the required factors, however, that statement alone is sufficient to establish that the court did, in fact, consider them. *Id.* at 1329–30.  Although we do not presume that a sentence falling within the guideline range is reasonable, we ordinarily expect such a sentence to be reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).  "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51, 128 S. Ct. at 597.

Here, the district court had no discretion to vary from the required statutory minimum sentence on Count Nine. *See United States v. Shelton*, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005); *see also United States v. Clark*, 274 F.3d 1325, 1328 (11th Cir. 2001) (per curiam) (Even when "a guidelines range falls entirely below a mandatory minimum sentence, the court must follow the mandatory statutory minimum sentence."). On Counts One and Four, the district court gave a lengthy explanation of its reasoning when it imposed the sentences, explicitly considering the § 3553(a) factors, particularly James's minimal criminal history. In addition, the district court appropriately weighed James's minimal criminal history and personal characteristics against the extensive and complex nature of the fraud in an attempt to fulfil all the goals of sentencing. These goals are to impose a sentence that, among other things, promotes respect for the law, provides just punishment for the offense, deters criminal conduct, and protects the public from James's future criminal conduct. Based on the sophistication of the crime, the number of victims, and the scope of the fraud conspiracy, the district court reasonably concluded that a total sentence within the guideline range was appropriate to promote respect for the law, provide just punishment, and deter James and others from committing further criminal activity. *See* 18 U.S.C. § 3553(a)(2). Because the district court appropriately considered all of the relevant factors (both aggravating and mitigating) and arrived at sentences for Counts One and Four,

14

with a total sentence for all three counts that is within the guideline range, the district court did not abuse its discretion.

**AFFIRMED.**