[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11538

_____

D.C. Docket No. 1:15-cr-00403-MHC-AJB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FRAZIER TODD, JR.

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 11, 2019)

Before TJOFLAT and JORDAN, Circuit Judges, and SCHLESINGER,* District
Judge.

_____

* The Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of
Florida, sitting by designation.

PER CURIAM:

Frazier Todd, Jr. challenges his conviction for filing tax returns fraudulently claiming that individuals were entitled to receive the American Opportunity Tax Credit ("AOTC") and the Fuel Tax Credit ("FTC").  He argues that two pieces of evidence—his prior tax fraud conviction and his testimony before Congress discussing the details of his previous tax fraud scheme—should not have been admitted at trial.  He also challenges the amount of loss and restitution determined by the district court at sentencing.  Because the district court did not abuse its discretion in admitting the challenged evidence at trial and did not clearly err in calculating the amount of loss and restitution at sentencing, we affirm.

**I**

After a four-day trial, a jury convicted Mr. Todd of one count of conspiring to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, one count of obstructing and impeding the internal revenue laws, in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2, and 10 counts of making false claims to the Internal Revenue Service (and aiding abetting others who made false claims), in violation of 18 U.S.C. §§ 287 and 2.

In short, Mr. Todd and his co-conspirators filed false tax returns on behalf of clients claiming that they were entitled to receive the AOTC and the FTC.  Those returns were fraudulent because the taxpayers had not incurred the $4,000 in

2

qualified educational expenses needed to qualify for the AOTC and did not have businesses that bought gas for vehicles and heavy machinery for "off highway use" required for the FTC. Based on the fraudulent returns, the IRS issued a $1,000 refund for each taxpayer who claimed the AOTC and between $10,000 to $15,000 for each taxpayer who claimed the FTC.

The district court sentenced Mr. Todd to 222 months in prison, to be followed by a term of supervised release. The court found that the fraudulent tax credit scheme resulted in a loss of $3,631,466 and ordered Mr. Todd to pay restitution (jointly and severally with his co-defendants) in that amount.

Mr. Todd challenges his conviction on two grounds: the government's admission at trial of his prior tax fraud conviction, and the government's admission at trial of his testimony before Congress. He also contests his sentence and the restitution order. He argues that his loss and restitution calculations were not supported by the evidence.

## II

We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Brown*, 415 F.3d 1257, 1264–65 (11th Cir. 2005). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *Id.* at 1266. For the reasons which follow, we conclude that the

3

district court did not abuse its discretion by admitting the evidence challenged by Mr. Todd.

In a motion in limine, Mr. Todd objected to the admission of his prior conviction in 1992 for conspiring to commit tax fraud and his 1994 testimony before a Congressional subcommittee discussing the conduct that led to that conviction. He argued that the evidence should be excluded because it was irrelevant or, alternatively, because the risk of prejudice outweighed its probative value. The government responded that the evidence was admissible under Federal Rule of Evidence 404(b) because it could show that Mr. Todd knew how to prepare false tax returns, use electronic filing numbers of other individuals to conceal his own activity, and determine which tax credits could be claimed without alerting the authorities. The evidence could also demonstrate his method of recruiting clients. All of that information, the government said, was relevant to its burden of proving knowledge, criminal intent, and absence of mistake.

The district court denied Mr. Todd's motion in limine. The district court explained that, although the conviction and testimony occurred more than 20 years ago, the evidence was admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Citing our decision in *United States v. Matthews*, 431 F.3d 1296, 1310–11 (11th Cir. 2005), the court ruled that the evidence was relevant to whether Mr.

Todd had the intent and knowledge to commit the acts charged in the present case, and thus did not amount to inadmissible character evidence. Moreover, the evidence was neither too remote to be probative nor too prejudicial given that Mr. Todd could present contrary evidence and request a limiting jury instruction.

At trial, Mr. Todd additionally argued that the transcript of his Congressional testimony was inadmissible because it was not certified and thus lacked a proper foundation. Although the government had obtained a certified copy of the transcript from the Library of Congress, the transcript did not "contain an affirmation from the court reporter that the testimony that was taken down is a true and accurate recordation of the testimony that was given at the hearing." D.E. 194 at 165. The district court overruled this objection, agreeing with the government that "whether it's an accurate transcript gets to the weight rather than the admissibility" of the transcript. *Id.* at 166.

The district court did not err by admitting Mr. Todd's 1992 conviction. The conviction was over 20 years old, and "temporal remoteness is an important factor to be considered as it 'depreciates the probity of the extrinsic offense.'" *Matthews*, 431 F.3d at 1311 (quoting *United States v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978) (en banc)). But the district court addressed this concern and found that the conduct Mr. Todd had committed was similar enough to the present charges to be relevant. Specifically, he "(1) filed false and fraudulent tax returns on behalf of both

5

corporate and individual clients; (2) used a variety of fraudulent methods to inflate the tax refunds claims on the returns; and (3) overstated his clients' claimed income on false Forms W-2." D.E. 134 at 7–8.

Mr. Todd "bears a heavy burden in demonstrating an abuse of the court's broad discretion in determining if an extrinsic offense is too remote to be probative." *Id.* Given the similarity between the two offenses, Mr. Todd has not met that burden here. He has also failed to demonstrate that any prejudicial effects so outweighed the probative value of the evidence that admission of the evidence was "a clear error of judgment as to amount to an abuse of discretion," especially in light of the district court's three separate limiting instructions to the jury. *Id.* at 1312. *See also United States v. Church*, 955 F.2d 688, 700 (11th Cir. 1992) (describing Rule 403 as "an extraordinary remedy which should be used sparingly, since it permits the trial court to exclude concededly probative evidence") (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)).

The district court also did not abuse its discretion by admitting Mr. Todd's Congressional testimony. The transcript was admissible as a self-authenticating document that contained "a seal purporting to be that of the United States . . . or a department, agency, or officer of an entity named above." Fed. R. Evid. 902(1)(A). The exhibit was submitted with a United States seal and a signature from the Section Head of the Duplication Services of the Office of Business Enterprises of the Library

of Congress.  The Section Head certified that the attached photocopies were "true representations" of the contents of the "IRS Filing Systems Vulnerable to Tax Refund Fraud" publication at the Library of Congress, which contained hearing transcripts before the House of Representatives Committee on Ways and Means.  *See* Supp. App. at 83, Gov't Ex. 1.  These features of the document were sufficient for self-authentication under Rule 902(1).  Any error in the transcript went to the transcript's weight, not to whether it was an authentic document.  And, as already explained, the district court did not err by finding that the congressional testimony was relevant because it addressed a similar crime he had committed in a similar way.  Therefore, Mr. Todd did not suffer unfair prejudice due to the district court's admission of the transcript.

### III

We review the district court's loss calculation for clear error.  *See United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003).  We conclude that the district court did not err in calculating the loss resulting from Mr. Todd's offenses.

Under the 2016 Sentencing Guidelines, Mr. Todd's base offense level was increased based on the amount of the loss involved in the offense.  *See* U.S.S.G. § 2B1.1(b)(1)(J).  As a general matter, "[w]hen calculating loss to victims according to the sentencing guidelines, the district court need only make a reasonable estimate of the loss."  *United States v. Masferrer*, 514 F.3d 1158, 1164 (11th Cir. 2008).  In

other words, the sentencing court does not always need to calculate an exact amount—only a "reasonable estimate of the loss, given the available information." *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011) (quoting *United States v. Lee*, 427 F.3d 881, 893 (11th Cir. 2005)).  The government, if challenged, "must support its loss calculation with reliable and specific evidence" that exceeds the threshold of preponderance.  *Id.* (internal quotation omitted).  *See also United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) ("When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence.") (internal quotation omitted).

The presentence investigation report explained that Mr. Todd was responsible for 393 false returns totaling $3,787,935 in refunds paid by the IRS.  The report also concluded that Mr. Todd was accountable for an additional $4,444,884 based on the convictions for conspiracy to commit mail and wire fraud.  Mr. Todd challenged the report, arguing that there was insufficient evidence at trial to support those calculations.

At sentencing, the government called Special Agent Lauren Neal to discuss the loss calculation. During Agent Neal's testimony, the government introduced two exhibits—summary charts that listed the names and addresses of the clients, the

8

amount of the AOTC and FTC Mr. Todd claimed on their behalf, and the amount of the refunds received from the IRS. Agent Neal testified that the charts did not contain every tax return that was prepared as part of the tax fraud scheme, but only those that the government was able to tie to Mr. Todd or his co-conspirators. The charts showed that the total amounts of fraudulent refunds were $3,631,466 for the AOTC and $2,254,828 for the FTC. The charts did not include tax returns that were filed by mail or in person, which were more difficult to connect to the conspiracy without a traceable IP address. In addition to identifying tax returns that were traceable to the defendants' IP addresses, Agent Neal identified tax returns filed by Mr. Todd and his associates based on the "preparer's name on the return" and "the bank accounts that the refund was going to." D.E. 196 at 23. Mr. Todd did not object to either of these exhibits and did not challenge the government's calculation in either of the charts.

The district court concluded that the government "proved by a preponderance of the evidence that . . . the loss exceeded $3.5 million," an amount well below the report's total loss amount calculation of $8,232,819. D.E. 196 at 42. In addition, the court noted: "I'm not sure what the exact loss amount is and I'm not sure anybody can tell me what it is, but I think the preponderance of the evidence shows it is certainly well in excess of $3.5 million." *Id.* Thus, the advisory guidelines placed Mr. Todd in a loss range between $3,500,000 and $9,500,000.

On appeal, Mr. Todd argues that the district court incorrectly adopted the government's calculations, which were based on "speculative" and "unreliable" inferences. *See* Appellant's Br. at 25. In particular, Mr. Todd argues that the government did not specify how many taxpayers had been interviewed about the legitimacy of their returns, or how much of each refund was legitimate. *Id.* at 26–27. He also argues that the district court acted arbitrarily by fixing the loss amount at over $3,500,000 based on the guideline ranges.

We disagree. Under the clear error standard, we must affirm the district court's loss amount finding if it is "plausible in light of the record viewed in its entirety." *United States v. Siegelman*, 786 F.3d 1322, 1333 (11th Cir. 2015). The district court's findings here meet that standard. The government presented evidence that Mr. Todd and his co-conspirators filed numerous tax credits that his clients did not apply for and were not qualified to receive. It narrowed the amount of those fraudulent tax credits to those that could be directly traced to Mr. Todd's business and filing numbers. Although Agent Neal spoke with only a few victims, those interviews displayed a pattern that Agent Neal described at sentencing. Mr. Todd did not challenge either Agent Neal's testimony or the calculations presented in the

10

charts.  As such, the government met its burden to prove the loss amount by preponderance of the evidence.[1]

Moreover, the district court did not act arbitrarily by declining to calculate a precise loss amount above the $3,500,000 minimum.  The record contained sufficient evidence that Mr. Todd was likely responsible for significantly more loss than $3,500,000 and potentially up to the report's calculation of $8,232,819.  Because the record supports the district court's conclusion that Mr. Todd committed *at least* $3,500,000 worth of fraud, the district court was not required to calculate a more precise amount.  *See e.g.*, *Masferrer*, 514 F.3d at 1164–65 (holding that the "district court's calculation of total loss between $20 and $40 million was not clearly erroneous" because it was a "reasonable estimate" given the evidence presented at trial and at sentencing).

**IV**

Finally, Mr. Todd argues that the district court clearly erred by ordering him to pay $3,631,466 in restitution to the IRS because that sum was not supported by the evidence.  But Mr. Todd did not object to the district court's restitution calculation at sentencing, so we may review only for plain error.  *See United States*

---

[1] Because the district court's loss calculation was supported by a preponderance of the evidence admitted at sentencing, Mr. Todd's Fourteenth Amendment due process rights were not violated. *See United States v. Perez*, 960 F.2d 1569, 1575 (11th Cir. 1992) ("Due process requires that factual determinations at sentencing be supported by a preponderance of the evidence . . . and that the defendant be on notice that such an amount is involved as may trigger enhancement.").

11

*v. Odom*, 252 F.3d 1289, 1299 (11th Cir. 2001) ("If a defendant fails to challenge a restitution order at sentencing, she waives that objection . . . In such a case, this Court reviews for plain error."). Under plain error, "[w]e will only entertain this issue where the failure to address a perceived error will result in manifest injustice." *United States v. Dabbs*, 134 F.3d 1071, 1084 (11th Cir. 1998). "We will find plain error only where (1) there is an error in the district court's determination; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001).

In his initial brief, Mr. Todd did not argue that there was plain error (only clear error) and he did not file a reply brief. Therefore, he waived the issue of whether the district court committed plain error in its restitution calculation. *See, e.g., United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived.").

In any event, there is nothing in the record that leads us to believe that the restitution calculation was plainly incorrect. Mr. Todd's argument on appeal is not that the calculation was mathematically inaccurate, but that it was not supported by

evidence because the district court "merely assumed that the amount of restitution and the amount of loss for guideline purposes would be the same." Appellant's Br. at 33. It is true that "the amount of loss does not necessarily equal the amount of restitution to be paid because a defendant's culpability will not always equal the victim's injury," *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010), and that unlike loss, "a restitution award must be based on the amount of loss actually caused by the defendant's conduct." *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001). But that is beside the point here because the district court did not merely equate loss with restitution. Rather, it relied on the detailed summary chart submitted by the government and explicated by Agent Neal. That chart listed the amount that the IRS refunded to each taxpayer, which here is "the amount of loss actually caused by the defendant's conduct." *Id.* Mr. Todd does not otherwise contest the factual accuracy of the exhibit, so we cannot say that there was plain error in the district court's restitution calculation.

## V

For the foregoing reasons, Mr. Todd's conviction and sentence are affirmed.

**AFFIRMED.**

13